**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:21-cv-23522**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

  **vs.**

**ROBERT LHEZ, individually and as an**
**officer of Arcana Center, Corp. and**
**of Partners VAD International Sàrl, also**
**d/b/a Lynco;**

**MIREILLE DAYER;**

**JULIE POULLEAU;**

**ARCANA CENTER, CORP., also d/b/a**
**LCO, LMS, CEB (a/k/a CENTRE DU BIEN-**
**ETRE SÀRL), LAURA VIVIAN, LOUIS DE**
**KERSAN, AND HELENA FAY;**

**PARTNERS VAD INTERNATIONAL**
**SÀRL, also d/b/a VAD PARTNERS, IMC**
**AND DONOVAN,**

      **Defendants.**
_____/

**<u>UNITED STATES OF AMERICA'S COMPLAINT FOR</u>**
**<u>PERMANENT INJUNCTION</u>**

Plaintiff, the United States of America ("United States"), by and through the undersigned

attorneys, hereby sues Defendants Robert Lhez, Mireille Dayer, Julie Poulleau, Arcana Center,

Corp., and Partners VAD International Sàrl  (collectively referred to herein as "Defendants"),

and alleges as follows:

## INTRODUCTION

1.      The United States brings this action for a permanent injunction and other equitable relief pursuant to 18 U.S.C. § 1345, in order to enjoin the ongoing or imminent commission of criminal mail fraud in violation of 18 U.S.C. § 1341.  The United States seeks to prevent continuing and substantial injury to the victims of fraud.

2.      Defendants have sent hundreds of thousands of fraudulent solicitations through the U.S. mail to recipients throughout the United States, including within the Southern District of Florida.  Defendants' solicitations purport to come from individuals—including "Laura Vivian," "Helena Fay," "Louis de Kersan," and "Donovan"—or companies offering psychic, clairvoyant, or astrological services or purported talismans.  These solicitations are written to give the impression that they are a personal letter to the recipient and that the sending psychics employed their powers in the exclusive and specific service of the recipient.  The solicitations claim that through the use of the psychic's powers and/or through purported talismans the individual recipient will come into good fortune resulting in an imminent financial windfall though the lottery, inheritance, or other game of chance.  The solicitations urge that time is of the essence and ask recipients to promptly send a response and processing fee or other payment in order to guarantee that the predicted wealth, good fortune, or other benefit will come to fruition.

3.      In reality, these solicitations are not personal letters but nearly identical form letters mailed, at Defendants' behest, in bulk to thousands of potential victims throughout the United States.  The individuals from whom the letters are purportedly sent either are fictitious, or, if they are real individuals, have no (or a de minimums) role in the mailing scheme.  The purported talismans, which Defendants represent are unique historical artifacts, are in fact cheap trinkets, purchased in bulk and sent to thousands of consumers.

2

4.      Victims who pay the requested fee never receive the promised benefit.  Tens of thousands of victims, especially the elderly or vulnerable, have sent payments totaling millions of dollars to Defendants.

5.      For the reasons stated herein, the United States requests injunctive relief pursuant to 18 U.S.C. § 1345 to enjoin Defendants' ongoing scheme to defraud using the U.S. mail in violation of 18 U.S.C. § 1341.

## JURISDICTION AND VENUE

6.      The Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1345 and 28 U.S.C. §§ 1331 and 1345.

7.      Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

8.      Plaintiff is the United States of America.

9.      Defendant Robert Lhez ("Lhez") is a resident of France.  Lhez has been engaging in mass mail fraud schemes like those described herein since at least 2012 and has, since at least 2017 been the owner and president of Arcana Center, and a partner, principal officer, and manager of Partners VAD International Sàrl.  Lhez also does business as an entity by the name of Lynco.

10.     Defendant Mireille Dayer ("Dayer") is a citizen of Switzerland.  Dayer has worked for Lhez and Arcana Center since at least as early as 2017.

11.     Defendant Julie Poulleau ("Poulleau") is a citizen of France.  Poulleau has worked for Lhez since at least as early as 2013, and has assisted him in operating this mail fraud scheme.  Since at least 2018, Poulleau has been employed by and served as primary business point of contact Partners VAD.

3

12.     Defendant Arcana Center, Corp. ("Arcana Center") which also does business as "LCO," "LMS," "CEB" (a/k/a Centre Du Bien-Être Sàrl), "Laura Vivian," "Louis De Kersan," and "Helena Fay," is a corporation organized and existing under the laws of the state of Delaware since February 2017.

13.     Defendant Partners VAD International Sàrl ("Partners VAD") is, and has been since at least as early as 2013, a limited liability company based in Geneva, Switzerland. Partners VAD also does business as VAD Partners, "Donovan," and an entity by the name of "IMC".

## DEFENDANTS' FRAUDULENT SCHEME

14.     Defendants have for years engaged in mail fraud schemes that have defrauded tens of thousands of victims throughout the United States.

15.     Lhez is the leader and director of this fraudulent mass-mailing operation. Lhez reviews and approves the design and content of these fraudulent solicitations before they are mailed, and directs the activities of Dayer, Poulleau, and others.  Lhez has operated this mailing fraud scheme since at least as early as 2012.  Lhez has utilized the corporate defendants Arcana Center and Partners VAD to operate this fraud scheme since at least 2017.

16.     Poulleau has worked with Lhez to operate this scheme since at least as early as 2013.  Poulleau's role has involved corresponding with various third-parties who facilitate the mail fraud scheme, such as full service printers to complete printing and mailing services.  Since at least June 2018, Poulleau has served as the primary point of contact and representative of Partners VAD responsible for contracting with and paying third-party U.S. based printing companies to design, mass produce, and mail various psychic solicitations in bulk. Poulleau

4

personally traveled to the United States in 2018 to meet with and establish business relationships between Partners VAD and various U.S. based printing companies.

17.     Dayer has worked for Lhez since at least as early as 2017.  Dayer has traveled to the United States on a number of occasions between 2017 and 2019.  She personally traveled to the United States to open Arcana Center's initial business accounts at various U.S. banks.  At present, Dayer and Lhez both have signatory authority on multiple U.S.-based bank accounts belonging to Arcana Center.

18.     In furtherance of the on-going mail fraud scheme, Defendants have sent solicitations promoting various "psychic" schemes (e.g. personalized psychic, clairvoyant, or astrological services or purported talismans) through the U.S. mail to potential victims throughout the United States, including within the Southern District of Florida.  The solicitations use a wide range of fraudulent tactics calculated to induce victims to send money to the Defendants.

19.     The solicitations are styled as personalized letters.  They claim that the victims are the sole recipient of the letter and that the solicitations were sent to the individual based on specific information about them, such as financial need, a special connection between the victim and an astrological talisman, or a vision that a psychic had about the victim.  The solicitations claim that the individual recipient has already won, or will soon win or receive, large amounts of money or other valuable prizes.

20.     Some of solicitations also contain inconspicuous fine print that purports to set out terms and conditions (i.e., disclaimers).  In many cases, the difficult-to-read "disclaimers" simply reiterate and reinforce the misrepresentations in the main part of the solicitation. In other solicitations, these small-font passages directly contradict the claims in the main body of the

solicitation.  Recipients are highly unlikely to see, let alone read and understand, the indecipherable print in the disclaimers.  And even if read, these hidden "disclaimers" do nothing to counteract the overall impression conveyed by the solicitations that the recipient will receive a prize or other benefit if the recipient pays the fee.

21.     The response forms contained within these solicitations resemble order forms and instruct the recipient to send cash or a money order usually ranging from $40 to $50 in order to receive the promised cash, prize, or other benefit.  If the recipient opts to send a money order, the solicitation instructs the recipient to make all money orders payable to "LCO," "LMS" or "CEB," or "IMC."

22.     To facilitate the return and processing of the above-referenced victim payments, the majority of Defendants' direct mail solicitations contain pre-addressed return envelopes.  The return envelopes are pre-addressed (e.g., "Laura Vivian, Co/CEB, CP 59, 1211 GENÈVE 12, SWITZERLAND") and the return addresses are (i) various foreign P.O. boxes that are rented on behalf of Defendants or (ii) private mail boxes controlled by Defendants at mailbox service providers throughout Europe.

23.     In reality, after making the payment, none of the victims ever receive the promised money, prize, or benefit.  The advertised services and products do not bring wealth or good fortune to the purchasers as promised.

24.     Arcana Center is the registered parent company of the tradenames "LCO," "LMS" and "CEB."  Since at least 2017, victim payments sent in response to Defendants' "psychic" solicitations and payable to "LCO," "LMS" or "CEB" have been deposited into bank accounts held in the name of Arcana Center, for which Lhez and Dayer are signatories.  The bulk of Arcana Center's revenue consists of victim proceeds from the "psychic" schemes, taking the

form of victim money orders payable to "LCO," "LMS," and "CEB" deposited into Arcana Center's U.S.-based bank accounts.

25.      Money from Arcana Center accounts is wired to accounts opened by Partners VAD, which uses the funds, in part, to pay for the scheme's expenses, such as printing and mailing the fraudulent solicitations.

26.      Victims have sent Defendants millions of dollars in response to fraudulent solicitations.  From March 2017 to June 2018, more than 34,000 victim payments sent in response to solicitations purportedly from psychics were deposited into Arcana Center accounts. These victim payments during that time period alone totaled more than $1.4 million.

## EXAMPLES OF FRAUDULENT SOLICITATIONS

27.      The specific fraudulent solicitations described below are examples of the different fraudulent solicitations sent by Defendants since at least 2017.  All three of the representative examples follow the same formula.  The notices from the purported "psychics" promise that: (1) large sums of money will come to the recipient as a windfall; (2) the "psychic's" services are unique to the recipient; and (3) the promised or predicted results are guaranteed.  The notices all call for a payment ranging from $40 to $50 from the recipient in exchange for the promised result.  Further some of notice/solicitations bear purported "disclaimers" written in small, difficult-to- read font, which seemingly contradict the alleged promises and guarantees prominently featured throughout the solicitations.

### *The "Laura Vivian" Solicitation*

28.      One solicitation sent by Defendants purports to have been sent by psychic "Laura Vivian" and creates the false impression that its recipient will imminently receive a check for

$7,800 and need only mail in a payment of $45.00 or $50.00 (depending on whether the recipient pays by cash or money order) to receive delivery of this financial windfall.  *See* Exhibit A.

29.     The notice states in bold, large print at the top "A LARGE SUM OF MONEY IS COMING TO YOU" and continues just below the large print, "PLEASE REFER TO THE ENCLOSED DOCUMENT FOR THE LATEST DIRECTIVE TO RECEIVE THE CHECK FOR $7,800!" The notice goes on to further explains that the consumer needs to wear a "CROSS OF FORTUNE" and that  if the consumer complies, the consumer will multiply his/her winnings.

30.     Defendants mailed nearly identical solicitations, save for the victim's name and address, to thousands of potential victims.  The solicitations contained a return envelope pre-addressed to a private mailbox in Switzerland.  Recipients of this solicitation who sent a payment for $45.00 in cash or $50.00 via money order to CEB did not receive a payment of $7,800, or any other prize.

### *The "Helena Fay" Solicitation*

31.     Another solicitation sent by Defendants purports to have been sent by psychic "Helena Fay" and creates the false impression that its recipient will receive a precious gem worth $12,000 and need only send payment of $45.00 – 50.00 in order to receive this item.  *See* Exhibit B.

32.     The return portion of the prize notice states "**AUTHORIZED FOR THE POSTAL TRANSFER OF THE PRECIOUS RUBY OF PERFECT DESTINY, WORTH WINNINGS OF 12,000 DOLLARS**."  The notice continues, "[I]t's now time for John to give the Invaluable Ruby, given to him by Maharaja de Jaipur, to a person who has a pressing need for money and blatant lack of luck" and explains that "He [John] told me that his Mother was

8

American and was called [victim's name] and that he wanted the person who inherited the Precious Ruby of perfect destiny, to also bear the name [victim's name]." The next section of the notice states, "He also asked me to ensure that the beneficiary of his Ruby understood the true value of things. You are called [victim's name], you have an urgent need for money, you lack luck and you understand the true value of things! You fit the profile exactly! John and I didn't take long to select you to receive the Precious Ruby of perfect destiny, Worth winnings of 12,000 Dollars."

33.     The final page of the notice instructs the victim to mark boxes stating that they agree to send payments in exchange for the "Precious Ruby of Perfect Destiny," and to enclose $45.00 cash or a $50.00 money order payable to "LMS."

*The "Louis de Kersan" Solicitation*

34.     The "Louis de Kersan" solicitations purport to be a personalized notice from psychic "Louis de Kersan." The top of the solicitation reads:  TRIPLE WINNING CLAIRVOYANT READING OF THE GRAND RITUAL OF BELISAMA THE VERY BRILLIANT.  The solicitation goes on to state that "The Ritual of Belisama is completely adamant.  You are going to win a very large sum within 17 days. You must not miss out on this first step towards fortune.  Send me back immediately this acceptance form (otherwise, I will not be able to do anything for you)."  The solicitation continues on the next page, "This truly confirms that in 17 days' time fortune will be yours." Further, at the bottom of the page it reads, "You do not have a minute to lose.  **Send me back immediately the consent form, printed out for your overleaf…and you fortune will be made!!! Every second counts. Reply immediately!!!"**  The solicitation instructs the recipient toe send $45.00 in cash or a money order payable to "LCO" in the amount of $50.00.  *See* Exhibit C.

## DEFENDANTS' KNOWLEDGE AND CONCEALMENT OF THE FRAUD

35.     Defendants know that their solicitations are not personal letters, but instead are identical form letters that Defendants mail in bulk to thousands of potential victims throughout the United States.  Defendants know that the solicitations they send to potential victims throughout the world contain false and misleading statements intended to induce the recipients to send them payments.  Defendants know that the thousands of form letters mailed to potential victims each year do not results in any individuals receiving the promised financial windfall, inheritance, or financial benefit.

36.     Defendants have also received warnings from the U.S. Postal Inspection Service ("USPIS") alerting them to the alleged fraudulent content of their psychic solicitations.

a.     On July 18, 2019, the USPIS withheld mail destined for a private mail box in Switzerland and addressed to "Laura Vivian" pursuant to 39 U.S.C. § 3003, which allows the U.S. Postal Service to withhold mail upon evidence that such mail uses a fictitious name in conducting a fraud scheme.  The Postal Service may then require the party claiming the mail to furnish proof of the claimant's identity and right to claim the mail. In lieu of the withheld mail, the USPIS mailed a Notice of Withholding Mail letter to the "Laura Vivian" mailbox, stating that the mail was being withheld from delivery under suspicion that it was facilitating fraud.

b.     Subsequently, on April 20, 2020, the USPIS again withheld mail destined for a private mail box in France.  The solicitations underlying this mail were purportedly signed by "Laura Vivian" and offered riches in exchange for a $40.00 processing fee.  In lieu of the withheld mail, the USPIS mailed a Notice of Withholding Mail letter on agency letterhead to the private mailbox, explaining that that the mail was being withheld from delivery under suspicion that it was facilitating fraud.

c.      On October 30, 2020, the USPIS seized all funds from business accounts belonging to Arcana Center.  The funds were identified as proceeds of, and directly traceable to the fraudulent psychic schemes discussed above, in violation of the mail fraud, wire fraud, and money laundering statutes.  The authorized signers on the accounts seized were Lhez and Dayer. USPIS mailed a notice of the seizure to the nominee, all authorized signatories, and any attorneys known at the time.  As noted previously, a substantial portion of Arcana Center's revenue consisted of victim proceeds of the psychic schemes, taking the form of victim money orders payable to "LCO," "LMS," and "CEB."

37.      Moreover, Defendants were aware that the U.S. government took action against several entities with whom they regularly contracted to conduct their direct mailing operations for facilitating mail and wire fraud schemes that utilized solicitations that were substantially similar to those mailed by Defendants.

a.      Trends Service in Kommunikatie B.V. ("Trends"), a Dutch business entity, contracted with Lhez as early as 2012 to provide Lhez with postal boxes in the Netherlands to receive victim payments and with caging services.[1]  Lhez remained a Trends client until approximately 2016.  In June 2016, the United States government filed suit, pursuant to 18 U.S.C. § 1345, against Trends in the Eastern District of New York, case number, 16-CV-02770, for its role as a caging service used to facilitate multiple international direct mail fraud schemes targeting victim in the Unites States.  One of the exhibits attached to the Complaint against

---

[1] Caging Services refers generally to processing direct mail payments and orders sent in response to an advertisement, solicitation.  The services provided may include, but are not  limited to, opening the return envelopes, entering or inputting data about individuals responding to said solicitation, processing payments, compiling product orders, correcting recipient addresses, processing returned mail, providing lockbox services and depositing funds and the associated data processing for each of these services.

Trends as an example of a fraudulent mailing was a psychic solicitation in the name of "Laura Vivian" that was mailed by Lhez.  This filing resulted in a permanent injunction against Trends entered in September 2016.  Lhez and Dayer had actual knowledge of the lawsuit against Trends, including the reference to "Laura Vivian."

      b.     Lhez rented customer lists from various mailing-list brokers, to include Macromark Inc. ("Macromark").  Each list contained thousands of potential victim names and addresses.  In September 2016, the United States government filed suit, pursuant to 18 U.S.C. § 1345, against Macromark in the Eastern District of New York, case number, 16-CV-5264, and obtained a temporary restraining order enjoining Macromark from, among other things, selling lead lists related to mailings selling astrological or clairvoyant services or representing that the recipient has won, will win, or will receive cash or prizes.  Pursuant to the temporary restraining order, Macromark served a copy of the order on all of its customers, including the entity through which Lhez was operating at the time.  On September 25, 2020, Macromark pled guilty to one count of mail and wire fraud conspiracy under 18 U.S.C. § 1349 in the District of Connecticut, case number 20-cr-00171, for its role in supplying mailing lists of potential victims to perpetrators of fraudulent mass-mailing schemes (to include the psychic mailing schemes perpetrated by the Defendants).

      c.     PacNet Services, Ltd ("PacNet"), a Canadian entity, was utilized by Lhez to process victim payments connected to solicitations purportedly from various psychics to include "Laura Vivian," "Louis de Kersan," and "Helena Fay."  Between July 2011 and September 2016, PacNet processed in excess of $2 million in victim payments on behalf of Lhez and the entities controlled by Lhez.  In September 2016, the U.S. Department of the Treasury, Office of Foreign Assets Control designated PacNet as a significant transnational criminal organization.  On

information and belief, Defendants Lhez and Dayer had actual knowledge of this action against PacNet, as the closure of PacNet forced them to find new bank accounts and payment processors to receive and process victim payments.  In June 2019, four PacNet executives were indicted by a grand jury in the District of Nevada for facilitating mail fraud schemes.

38.     Despite knowing their solicitations were replete with falsehoods and fabrications, warnings from the USPIS, and knowledge of the actions taken against entities with whom they conducted business, Defendants continue to mass produce, print, and mail "psychic" solicitations throughout the United States and elsewhere in the world.

## HARM TO VICTIMS

39.     Victims, especially elderly and vulnerable victims, suffer financial losses from the mail fraud scheme that Defendants perpetrate.  If unabated, these losses will rise and continue harming Defendants' victims.

40.     The harm to victims is ongoing and will continue without the injunctive relief sought by the United States.

## COUNT I

(18 U.S.C. § 1345 – Injunctive Relief)

41.     The United States re-alleges and incorporates by reference paragraphs 1 through 40 of this Complaint as though fully set forth herein.

42.     By reason of the conduct described herein, Defendants violated, are violating, and are about to violate 18 U.S.C. §§ 1341 and 1349 by executing a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent representations with the intent to defraud, and, in so doing, use the U.S. mail.

43.     Upon a showing that Defendants are committing or about to commit mail fraud, the United States is entitled, under 18 U.S.C. § 1345, to a permanent injunction restraining all future fraudulent conduct and any other action that this Court deems just in order to prevent a continuing and substantial injury to the victims of fraud.

44.     As a result of the foregoing, Defendants' conduct should be enjoined pursuant to 18 U.S.C. § 1345.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff United States of America requests of the Court the following relief:

45.     That the Court issue a permanent injunction pursuant to 18 U.S.C. § 1345, enjoining Defendant, their agents, officers, and employees, and all other persons and entities in active concert or participation with them from:

a.     committing or conspiring to commit mail fraud, as defined by 18 U.S.C. §§ 1341 and 1349;

b.     directly or indirectly, assisting, facilitating, or participating in any Mass-Mail Marketing[2] or Prize Promotion Scheme;[3]

c.     using the United States mail, or causing others to use the United States mail, to distribute any advertisements, solicitations, or promotional materials:  (1) related or referring to

---

[2] Mass-mail marketing is any plan, program, or campaign that utilizes the United States mail to induce via substantially identical content, a large number of persons to (1) purchase goods or services or (2) participate in a lottery, contest or sweepstakes.

[3] A prize promotion scheme is a plan, program, promotion, or campaign that utilizes the U.S. mail to mislead a prospective consumer or consumers to believe that they have won, or may or will win or receive, a sweepstakes, contest, lottery, prize, inheritance, money, property, or other thing of value, contingent on the victim providing, or providing a means of accessing or obtaining, any fee.

lotteries, sweepstakes or other games of chance, (2) purporting to be from a psychic or clairvoyant, or otherwise relating or referring to psychic, clairvoyant, or astrological services or items;  (3) that represent, directly or indirectly, that the recipient has won, will win, or will receive cash, awards, prizes or an inheritance; or (4) contain materially false or misleading representations (for purposes of this Complaint, "Covered Materials");

d.      receiving, handling, opening, or forwarding any mail that responds, by sending payment or otherwise, to any Prize Promotion Scheme, Mass-Mail Marketing, or Covered Materials and has traveled through United States mail;

e.      printing, or causing others to print, any Mass-Marketing, Prize Promotion, or Covered Materials that will be distributed through the United States mail;

f.      obtaining or entering into any ownership interest, employment relationship, affiliation, or other contractual relationship with any business entity (incorporated or unincorporated) involved in Mass-Mail Marketing, Prize Promotion Scheme; and/or Covered materials;

g.      renting, possessing, or having control over any post office boxes, commercial mail receiving agency  boxes, private mail boxes, or other addresses located in the United States for the purposes of receiving Covered Materials, Mass-Mail Marketing, or Prize Promotion mail in their own names or in the names of any agents or corporate entities owned or controlled by Defendants.

46.      That the Court further order that, pursuant to 18 U.S.C. § 1345, the United States Postal Service and United States Customs and Border Control are authorized to detain:

a.      all of Defendants' mail, addressed to any foreign P.O. box, private mail boxes, or any other address anywhere in the world registered to, rented by, or controlled by Defendants or

any other corporate entity owned or controlled by Defendants, which is responsive to any Mass-Mail Marketing, Prize Promotion, or Covered Materials;

b.      all of Defendants incoming mail, mail matter, or packages transported in interstate or foreign commerce addressed to any post office boxes, private mail boxes or any other address anywhere in the United States of America registered to, rented by, or controlled by Defendants or any other corporate entity owned or controlled by Defendants, which consists of or contains responses to any Mass-Mail Marketing, Prize Promotion, or  Covered Materials;

c.      any Mass-Mail Marketing, Prize Promotion, or Covered Materials, that are deposited into the United States mail, or brought into the United States as freight and destined for delivery to a potential victim in the United States, by Defendants, their agents, officers, or employees, or any other persons or entities in active concert or participation with them.

47.     That the Court order such other and further relief as the Court shall deem just and proper.

Dated:        October 6, 2021

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY


James A. Weinkle
Assistant United States Attorney
Florida Bar No.: 0710891
United States Attorney's Office
99 N.E. 4th Street
Miami, Florida 33131
Tel: 305-961-9290
Email: James.Weinkle@usdoj.gov

*Counsel for United States of America*

Respectfully Submitted,

BRIAN BOYNTON
Acting Assistant Attorney General
Civil Division

ARUN G. RAO
Deputy Assistant Attorney General


GUSTAV W. EYLER
Director
Consumer Protection Branch


JAQUELINE BLAESI-FREED
Assistant Director

Ann F. Entwistle
Yolanda McCray Jones
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, D.C. 20044
Tel.: (202) 305-3630
Tel.: (202) 305-7016
Email: Ann.F.Entwistle@usdoj.gov
Email: Yolanda.D.McCray.Jones@usdoj.gov
*Counsel for United States of America*

17